JOHN TRUEBODY, Appellant *v.* F. M. JACOBSON, A. T. WILSON, and H. SPARKS, Respondents.

A party already having the legal and equitable title, cannot sue for a further conveyance.

APPEAL from the Superior Court of the City of San Francisco.

On the 18th of September, 1849, Dunbar executed a bond to Gulzman, reciting that he had sold to Gulzman a lot on Washington street, twenty-three feet by forty feet, for $10,500, whereof $3,500 were paid at the time, and $3,500 to be paid January 1st, 1850, and $3,500 March 1st, 1850; and conditioned to convey the premises with warranty, on full payment of the purchase money. By an indorsement on the bond, made April 1st, 1850, Dunbar extended the time ninety days from that date, in consideration, (as the indorsement stated,) of Gulzman's note, at ninety days, for $6,160.74, the balance of the purchase money. On the 29th of June, 1850, Gulzman, by indorsement, assigned all his interest in the bond and property mentioned to Sparks; who, by a like indorsement, on the 9th of September, 1850, assigned all his interest to A. T. Wilson and J. Clarke.

In November, 1849, Dunbar executed a sealed instrument to Truebody, reciting the sale and title bond to Gulzman, and that $7,000 of the purchase money remained unpaid, to secure which Dunbar held the legal title; and then, in consideration of $7,000 paid by Truebody to Dunbar, selling and assigning to Truebody the said debt of $7,000 due from Gulzman; and also bargaining, selling, and assigning to Truebody all Dunbar's right in the lot. It seems that the extension of ninety days, indorsed on the bond to Gulzman by Dunbar, April 1st, 1850, was made with True-

body's privity; and that the note for $6,160.74 was payable to Truebody, with interest at two per cent. per month;—being for the balance due from Gulzman for his purchase. Gulzman had made some payments to Truebody between the assignment by Dunbar to Truebody, and the arrangement made April 1st, 1850.

On the 11th of July, 1850, Truebody filed a complaint against Gulzman, Rosenswig, Lask, and Sparks, which was amended several times. It stated the sale and bond from Dunbar; that Gulzman took possession; the assignment by Dunbar to Truebody; the transaction of April 1st, 1850; that Gulzman still owed Truebody the balance of $6,160.74, with interest; that Gulzman was insolvent; that Lask, (with whom Rosenswig was interested,) leased a part of the premises from Gulzman, and pretended to a claim on them for money advanced; but insisting that Truebody's lien for the purchase money was paramount; and stating the assignment made by Gulzman to Sparks, June 29th, 1850 : and praying judgment in favour of Truebody for the amount of the note and interest, and for a sale of the lot, &c.

Sparks and Gulzman appeared by J. Clarke and A. T. Wilson, their attorneys, and severally filed demurrers and answers. After various proceedings, the cause was finally tried by the Court, sitting as a jury, (the demurrers being overruled:) who found that Gulzman purchased the lot as stated; that Dunbar, in November, 1849, sold and assigned to Truebody his debt against Gulzman, with his lien on the lot for its payment; that the note for $6,160.74, given by Gulzman to Truebody, April 1st, 1850, was for the balance of the purchase money due from him, and was still due, with interest : and judgment therefor, with costs, was rendered against Gulzman; and it was ordered that on his failure to pay within thirty days, all Gulzman's right in the lot be sold, for payment of the judgment, &c.; and the decree further appointed one Framer receiver of the rents, &c. This judgment was rendered January 31st, 1851. An execution issued on the judgment, March 4th, 1851; and on the 28th of the same month, Truebody became the purchaser, at the sheriff's sale, for $6,900, and receipted on the writ for the amount.

On the 8th of February, 1851, Truebody filed another complaint, stating the foregoing suit and judgment, and the appoint-

ment of Framer as receiver, who gave bond, &c.; that the receiver had applied to Jacobson, a tenant of the lot in question, for the payment of $400—one month's rent,—but he refused payment, alleging that he held under a lease from Clarke and Wilson, the attorneys for Sparks and Gulzman in the former suit, who pretended to be owners of the lot: and insisting that Clarke and Wilson ought not to be permitted to set up any such claim, as they were attorneys in the former suit, and took an assignment of the rights of Gulzman and Sparks, with full notice of Truebody's claim, and after the commencement of the former suit: and praying that Jacobson, Clarke, and Wilson be made defendants, and for an injunction, &c. Jacobson, Clarke, and Wilson appeared, and filed several demurrers and answers. Various proceedings were had in the cause, and testimony taken, &c.: but finally, May 13th, 1851, it was ordered that the complaint be dismissed without prejudice.

On the 15th of May, 1851, Truebody filed his "original complaint, and in the nature of a review," against Jacobson, Clark, Wilson, Sparks, and Gulzman, setting forth the foregoing proceedings and matters; charging that the judgment or decree in the first suit was defective, as it affected only the interest of Gulzman; charging Wilson and Clarke with concealment, fraud, &c.; that Truebody purchased at the sheriff's sale by mistake, &c.; and praying that the sale be set aside; the whole proceedings reviewed; the plaintiff reinstated in his rights; and the premises sold to satisfy the amount due the plaintiff; and for general relief, &c.

Clarke appeared and filed a disclaimer. Sparks, Jacobson, and Wilson, filed sundry demurrers and answers. Wilson claimed to be owner of the property, under the assignment made by Sparks, in September, 1850.

The cause was tried by a jury in September, 1851, who found a general verdict for the plaintiff, and further found specially, that Dunbar retained his lien on the lot for the purchase money, which had never been satisfied; that a deception was practised on the plaintiff at the sheriff's sale; that the plaintiff bid through mistake; and that the sheriff's sale was void. Motions were made in arrest of judgment, and for a new trial, and overruled. The plaintiff then presented a decree for the signature of the Court;

—which, after various hearings, was finally rejected, December 19th, 1851; and judgment arrested, and the complaint dismissed. The plaintiff appealed.

*A. C. Baine*, for the appellant, cited Sto. Eq. Pl. sec. 455; 13 Pet. 6; 6 How. 189; 10 Pet. 209; Sto. Eq. sects. 293, 385, 1217—23; Dan. Ch. Pr. 1451, 1455; 2 Partidas, 893; Prac. Act, 1850, sects. 25, 68; 1 Mason, 153.

*A. T. Wilson*, for the respondents, cited Hogan *v.* King, in this Court; Palmer *v.* Best, 11 Johnson, 530; Brockway *v.* Kinney, 2 Ib. 210; 10 Ib. 365; Le Guen *v.* Governeur, 1 Johnson's Cases, 436, 491; Marriott *v.* Hampton, 7 T. R. 265; 1 Sto. Eq. sec. 405; Costar *v.* Brush, 25 Wend. 628; 2 Phil. Ev. 36; 2 Ambl. 763.

Justice HEYDENFELDT delivered the opinion of the Court. The purchase of the property mentioned in the bill, by the plaintiff from Dunbar, gave him the legal title. His purchase at the sale, made under the decree rendered in the action which is referred to in the bill, invested him with the equity. So that, as appears from his own averments, he has a complete investiture of the legal and equitable title, as fully as it could be derived from Dunbar, the first owner.

This bill is filed to set aside his own decree, the sale made under it, at which he was the purchaser, and to obtain another and fresh sale. For what good reason all this is desired, is beyond an ordinary comprehension.

Judgment below affirmed.

February 19.   Re-hearing granted.